As of the prior case, Your Honors, this case involves an individual whose families have suffered. His half-brother and his father or half-father were kidnapped. His half-brother's uncle was killed. There are many elements of forced recruitment, as in the prior case, where the most blatant ones, the guerrillas, came to the school and addressed the children and said that when they were 13 or 14, they could expect to join with the guerrilla movement. A petitioner left Guatemala shortly thereafter. Words came to the United States when he was about 14 or 15 years old. And fear is returning. Your Honor, I would like to particularly address the argument that his fear is on account of his membership in a particular social group. We can really identify two social groups. One is his family, because of the harm suffered by his immediate relatives, his father, half-brother, and uncle. And secondly, with his ethnic group. He comes from the Mayan people living in Huehuetenango. They speak a distinct language called Conobal. They typically wear a different clothing, a little bit típica. They have a cohesive social group where all the individuals living in what would be a county-wide area have this particular ethnic identity, being Conobal Indians. They have a strong, cohesive social group, having lived there for hundreds or perhaps thousands of years, typically living under small properties. And the persecution of these people by both sides, by the government and by guerrilla groups, was particularly ferocious during the Civil War, but has continued since then. In 1996, the State Department of Human Rights reports stated that even after the end of the Civil War, the guerrillas continued to threaten and hurt people. And what the State Department described as elements of former military members took advantage of the Petitioner. Well, you understand the problem. It looks like another recruitment case. We know what Elias Zacharias says about them. And sympathetic as some of the facts may be, you've got a huge precedent to get over. Yes, but there's still that other prong. What's that? There's still the other prong of asylum, or the other grounds for receiving asylum, where the person is being persecuted on account of his membership in a particular social group. And what's the social group? It is two things. It's immediate family. It's immediate family? Yes. Aren't some of them in there right now? I'm sorry? Aren't some of them there? Yes, but some of them were also killed. Some of them were also kidnapped. Some have disappeared. Well, it looks like the guerrillas sort of came down to that town and village and wanted people. But did they target the family in some way? I believe they did, Your Honor, when there were so many individuals in the family that were harmed. And they were harmed particularly, besides being one individual family, but particularly their targets, because they are Cajon Indians living in this isolated area of Guatemala, where the guerrillas believe that this people is their natural constituency. So they persecute them? They persecute them if they don't join them, if they don't give them food, if they don't give them the last few beans that they have to eat, the last few tortillas that are in the house. They kill them. They take them away. They make them disappear. And that has not continued to the same extent as it did prior to the peace accords, but it still continues. And the fear that Petitioner has is subjective, but it's also based in reality. It's based on what has happened to his family, to thousands of other Cajon Indians. That's why there's been a wholesale shift of population, a desertion of the villages from northwestern Guatemala. People, thousands of refugees living both in Mexico and the United States, because these men, particularly these indigenous people, were targeted as being, okay, either you're with us or you're against us. Pure black and white, pure both Marxist, Leninist, and fascist ideology from both the government and the guerrillas. In his case, he felt what he really had to fear were these Marxist, Leninist, guerrillas who said, either you're with us and you come join us when you're 14 years old or we're going to kill you. And look at what we've done to your family. You know we can do this. Does he testify he was threatened with death? No, he doesn't. So actually, what harm did he personally suffer? He personally did not suffer any harm. Harm to his entire family and his reasonable fear that if he remained after turning 14 or 15, same fate would be with him. Okay, why don't you save the rest of your time for rebuttal and we'll hear from the government. Good morning, Ethan Cantor on behalf of the respondent. I think the case is squarely controlled by Elias Zacharias. There are some salient facts in the record which specifically undercut the petitioner's claim, which I'd like to point out. His half-brother and his father and stepfather and all of his five sisters continue to live in the village where he was raised. One of his half-brothers in particular, who was forcibly recruited by the guerrillas, was then released. And the uncle who was killed by his testimony was killed. The reason was that he refused recruitment, and that's in the record, page 148. One of his half-brothers who testified regarding the forced recruitment actually returned. He has one half-brother who continues to live in Guatemala, another half-brother who's in the United States. The one in the United States actually returned to Guatemala for three months. That's at page 149 of the record. This record is overwhelming in establishing that the recruitment was solely for the purpose of augmenting their ranks and they demanded food. That's at pages 143 through 148. And finally, I'd like to point out that this Department of State report specifically addresses political claims by Indians. And in doing so, at page 133 of the record, states, and I quote, since the signing of the peace accords, we have seen no claims by Indians that could be attributed to political motives. And I think that's rather unequivocal with regard to political motives. As to the social group persecution, the record regarding the reasons for the recruitment, that it was to recruit, augment their ranks, specifically defeat the notion that it was this family. Also, the fact that the family, a large portion of the family, remains in the very village where he grew up. And in summary, I would say there is no evidence that the guerrillas either believed or erroneously believed that this petitioner's refusal was politically based, or that they sought to recruit from this family in particular, or this Indian village. The Department of State report is rather clear that the guerrillas who operated in the mountains, they lived off of the Indian villages in those mountain areas. That's how they survived. Not because of any particular Indian group, such as this petitioner's group, but merely that circumstantial geographical fact. And thus, I would close by asking the Court to affirm the decision below and deny the petition for review, unless the Court has any questions. Thank you. Mr. Butler? Okay. Thank you. Thank you both for your arguments. Case to serve will be submitted. The next case on the oral argument calendar is Castillo-Osorio v. Ashcroft. Thank you.
judges: Noonan, Thomas, Bea